# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2065
_____

| | | |
|---|---|---|
| American Italian Pasta Company, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| New World Pasta Company, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 17, 2003
Filed: June 7, 2004

_____

Before RILEY, RICHARD S. ARNOLD, and MELLOY, Circuit Judges.

_____

RILEY, Circuit Judge.

"America's Favorite Pasta"–Commercial puffery or factual claim?

American Italian Pasta Company (American) sued New World Pasta Company (New World), seeking a declaratory judgment that American's use of the phrase "America's Favorite Pasta" does not constitute false or misleading advertising under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (2000). New World counterclaimed, asserting American's use of "America's Favorite Pasta" violated the Lanham Act and many states' unfair competition laws. On summary judgment, the

district court[1] concluded American's use of "America's Favorite Pasta" did not violate the Lanham Act, dismissing New World's counterclaims and declining to exercise jurisdiction over New World's state law claims. We affirm.

## I.    BACKGROUND

From 1997 to 2000, American[2] manufactured Mueller's brand (Mueller's) dried pasta for Best Foods. In the fall of 2000, American purchased Mueller's and assumed all packaging, distributing, pricing, and marketing for the brand. Since purchasing Mueller's, American has placed the phrase "America's Favorite Pasta" on Mueller's packaging. On various packages, the phrases "Quality Since 1867," "Made from 100% Semolina," or "Made with Semolina" accompany the phrase "America's Favorite Pasta." The packaging also contains a paragraph in which the phrase "America's Favorite Pasta" appears. The paragraph states (1) pasta lovers have enjoyed Mueller's pasta for 130 years; (2) claims Mueller's "pasta cooks to perfect tenderness every time," because Mueller's uses "100% pure semolina milled from the highest quality durum wheat;" and (3) encourages consumers to "[t]aste why Mueller's is America's favorite pasta."

New World[3] sent American a letter demanding American cease and desist using the phrase "America's Favorite Pasta." Consequently, American filed this suit, requesting a declaration that its use of the phrase "America's Favorite Pasta" does not constitute false or misleading advertising under the Lanham Act. In its federal

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

[2]American sells dried pasta under the brand names Mueller's, Golden Grain, Mrs. Grass, Ronco, Luxury, R & F, Global A1, Pennsylvania Dutch, and Anthony's.

[3]New World sells dried pasta under the brand names Ronzoni, San Giorgio, Skinner, American Beauty, Light n' Fluffy, Goodman, Mrs. Weiss, Prince, Creamette, Monder, Albadoro, Catelli, Lancia, and Ronzoni Canada.

counterclaim, New World asserted American's use of "America's Favorite Pasta" violated the Lanham Act. New World claims American's use of the phrase is false or misleading advertising, because, according to New World's consumer survey, the phrase conveys Mueller's is a national pasta brand or the nation's number one selling pasta. American and New World agree Barilla sells the most dried pasta in the United States and American's brands are regional.

American moved to dismiss New World's counterclaims, arguing the phrase "America's Favorite Pasta" constituted non-actionable puffery. New World resisted American's motion and filed a motion for partial summary judgment. The district court denied American's motion, concluding it would have to consider facts outside the pleadings to determine if the phrase "America's Favorite Pasta" constituted puffery. Two weeks later, the district court denied New World's motion for partial summary judgment, dismissed New World's Lanham Act counterclaim, and declined to exercise jurisdiction over New World's state law counterclaims. The district court concluded the phrase "America's Favorite Pasta" constitutes non-actionable puffery as a matter of law, and the phrase is not actionable under the Lanham Act. New World appeals, contending the phrase "America's Favorite Pasta" is not puffery, but is a deceptive factual claim.

## II.    DISCUSSION

We review the district court's summary judgment decision de novo. Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co., 325 F.3d 1024, 1027 (8th Cir. 2003). A purpose of the Lanham Act is "to protect persons engaged in commerce against false advertising and unfair competition." United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1179 (8th Cir. 1998). To establish a false or deceptively misleading advertising claim under section 43(a) of the Lanham Act,[4] New World must establish:

---

[4]Section 43(a) of the Lanham Act states, in pertinent part:

(1) a false statement of *fact* by [American on its packaging] about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement.

Id. at 1180 (emphasis added). The failure to establish any element of the prima facie case is fatal. Pizza Hut, Inc. v. Papa John's Int'l, Inc., 227 F.3d 489, 495 (5th Cir. 2000).

Under section 43(a), two categories of actionable statements exist: (1) literally false factual commercial claims; and (2) literally true or ambiguous factual claims "which implicitly convey a false impression, are misleading in context, or [are] likely to deceive consumers." United Indus., 140 F.3d at 1180. Besides actionable statements, a category of non-actionable statements exists. Id. Many statements fall into this category, popularly known as puffery. Id. Puffery exists in two general

---

(1) Any person who, on or in connection with any goods . . . uses in commerce any . . . false or misleading description of *fact*, or false or misleading representation of *fact*, which –

. . .

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a) (emphasis added).

forms: (1) exaggerated statements of bluster or boast upon which no reasonable consumer would rely; and (2) vague or highly subjective claims of product superiority, including bald assertions of superiority. <u>Pizza Hut</u>, 227 F.3d at 496-97; <u>United Indus.</u>, 140 F.3d at 1180.

Juxtaposed to puffery is a factual claim. A factual claim is a statement that "(1) admits of being adjudged true or false in a way that (2) admits of empirical verification." <u>Pizza Hut</u>, 227 F.3d at 496 (quoting <u>Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.</u>, 784 F.2d 674, 679 (5th Cir. 1986)). To be actionable, the statement must be a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." <u>Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.</u>, 173 F.3d 725, 731 (9th Cir. 1999); <u>cf.</u> <u>United Indus.</u>, 140 F.3d at 1180 (noting puffery does not include "false descriptions of specific or absolute characteristics of a product and specific, measurable claims of product superiority"). Generally, opinions are not actionable. <u>Coastal Abstract</u>, 173 F.3d at 731.

Puffery and statements of fact are mutually exclusive. If a statement is a specific, measurable claim or can be reasonably interpreted as being a factual claim, i.e., one capable of verification, the statement is one of fact. Conversely, if the statement is not specific and measurable, and cannot be reasonably interpreted as providing a benchmark by which the veracity of the statement can be ascertained, the statement constitutes puffery. Defining puffery broadly provides advertisers and manufacturers considerable leeway to craft their statements, allowing the free market to hold advertisers and manufacturers accountable for their statements, ensuring vigorous competition, and protecting legitimate commercial speech.

## A. "America's Favorite Pasta" Standing Alone

The phrase "America's Favorite Pasta," standing alone, is not a statement of fact as a matter of law. The key term in the phrase "America's Favorite Pasta" is

"favorite." Used in this context, "favorite" is defined as "markedly popular especially over an extended period of time." Webster's Third New International Dictionary 830 (unabridged 1961). Webster's definition of "favorite" begs the question of how "popular" is defined. In this context, "popular" is defined as "well liked or admired by a particular group or circle." Id. at 1766. By combining the term "favorite" with "America's," American claims Mueller's pasta has been well liked or admired over time by America, a non-definitive person.[5]

"America's Favorite Pasta" is not a specific, measurable claim and cannot be reasonably interpreted as an objective fact. "Well liked" and "admired" are entirely subjective and vague. Neither the words "well liked" nor "admired" provide an empirical benchmark by which the claim can be measured. "Well liked" and "admired" do not convey a quantifiable threshold in sheer number, percentage, or place in a series. A product may be well liked or admired, but the product may not dominate in sales or market share. For example, assume a consumer's favorite cut of meat is beef tenderloin. If we were to look at the sheer amount of beef tenderloin our hypothetical consumer buys relative to other cuts of meat, beef tenderloin may not have a sizable market share or account for a significant percentage of the amount of money spent on meat. Therefore, we could not accurately determine whether beef tenderloin was the consumer's favorite cut of beef based on those benchmarks. The fact is, the consumer may admire beef tenderloin and like it best among beef cuts, but beef tenderloin is too expensive for our consumer to eat often. Likewise, sales volume and total dollars spent on particular pasta brands in the United States may not uncover America's favorite pasta.

---

[5]We note the outcome of this case might be different if American claimed Mueller's pasta was the favorite pasta of a specific person or an identifiable group. Such a claim might be a statement of fact. For example, the claim that Mueller's is Judge Michael Melloy's favorite pasta would not be puffery. Such a statement is a factual statement that could be verified by simply asking Judge Melloy which pasta brand is his favorite.

"America's Favorite Pasta" also does not imply Mueller's is a national brand. First, "America's" is vague, and "America's," as well as "America" and "American" used in a similar context, is a broad, general reference. Second, a brand, chain, or product could be America's favorite without being national. For example, an individual restaurant or restaurant chain may be America's favorite, but may be located only in one or a few states. Although the restaurant chain may not be available nationally, consumers may prefer the restaurant because of its quality of food, quality of service, atmosphere, or some other attribute. Because "America's Favorite" depends on numerous characteristics, many of which may be intrinsic, a product (be it a restaurant, grits, or pasta) need not be sold nationally to be America's favorite.

### B.    "America's Favorite Pasta" Viewed In Context

Having decided the phrase "America's Favorite Pasta," standing alone, is not a statement of fact, we consider whether the context in which the phrase is used by American transforms it into a statement of fact. See Pizza Hut, 227 F.3d at 495 n.5 (noting the context in which a statement appears can be used to determine if the statement is actionable under the Lanham Act). "America's Favorite Pasta" appears on Mueller's packaging in two places. First, Mueller's packaging contains the phrase "America's Favorite Pasta" in the following paragraph (Paragraph):

> For over 130 years, pasta lovers have enjoyed the great taste of Mueller's. Our pasta cooks to perfect tenderness every time because it's made from 100% pure semolina milled from the highest quality durum wheat. Taste why Mueller's is America's favorite pasta.

Second, "America's Favorite Pasta" appears directly above "Quality Since 1867" on some packaging, and directly above "Made from 100% Semolina" or "Made with Semolina" on other packaging (Phrases).

The Paragraph and the Phrases fail to transform "America's Favorite Pasta" into a statement of fact. The Paragraph does not suggest a benchmark by which the veracity of American's statement can be verified. The Paragraph generally declares the brand has existed for 130 years, Mueller's tastes great, cooks to perfect tenderness, and is manufactured from high quality grain. We assume, *arguendo*, the sentence "Taste why Mueller's is America's favorite pasta" incorporates the attributes listed in the Paragraph into American's claim. Two attributes listed in the Paragraph are subject to verification: Mueller's is made from 100% pure semolina, and the brand is more than 130 years old. New World does not contend these claims are false. The remaining attributes listed in the Paragraph are unquantifiable and subject to an individual's fancy.

Notwithstanding the incorporation of these claims into "America's Favorite Pasta," the unverifiable attributes attenuate verifiable, and accurate, claims. "Taste why Mueller's is America's favorite pasta" suggests all of the attributes listed in the Paragraph are the reason Mueller's is "America's Favorite Pasta" and suggests each carries equal weight. The unquantifiable attributes coupled with two verifiable attributes do not render the phrase "America's Favorite Pasta" subject to verification.

Similarly, the Phrases do not convey a benchmark for "America's Favorite Pasta." The term "quality" is vague, entirely subjective, and a bare assertion of product superiority. In the context used, "quality" means "inherent or intrinsic excellence of character or type" or "superiority in kind." Webster's Third New International Dictionary 1858 (unabridged 1961). The only portion of "Quality Since 1867" that can be verified is "Since 1867," but "Since 1867" does not provide a methodology or a reason why Mueller's is America's favorite. The words simply state, accurately, when the brand was founded. Likewise, while presenting factual claims, the phrases "Made from 100% Semolina" and "Made with Semolina" do not define a methodology by which to ascertain the veracity of American's claim that

Mueller's is "America's Favorite Pasta." The two phrases simply, and correctly, list characteristics of the pasta.

### C.    Consumer Surveys

We now consider whether the results of New World's consumer survey transform the phrase "America's Favorite Pasta" into a specific, measurable claim. In its survey, New World asked consumers if the phrase "America's Favorite Pasta" conveyed a meaning. According to New World, thirty-three percent of those surveyed allegedly perceived the phrase "America's Favorite Pasta" to mean Mueller's is the number one brand. Fifty percent of those surveyed allegedly perceived the phrase "America's Favorite Pasta" to mean Mueller's is a national brand.

The Seventh Circuit confronted a similar question in <u>Mead Johnson & Co. v. Abbott Laboratories</u>, 201 F.3d 883 (7th Cir.), <u>opinion</u> <u>amended</u> <u>on</u> <u>denial</u> <u>of</u> <u>reh'g</u>, 209 F.3d 1032 (7th Cir. 2000). Having concluded the phrase "1st Choice of Doctors" conveyed more doctors prefer this product over its rivals, the Seventh Circuit considered whether a consumer survey can assign a different meaning to a phrase. <u>Id.</u> at 883-84. Mead Johnson's survey indicated consumers perceived the phrase "1st Choice of Doctors" to mean a majority of doctors. Concluding the district court erred in using the survey to assign such a meaning, the Seventh Circuit noted, "never before has survey research been used to determine the meaning of words, or to set the standard to which objectively verifiable claims must be held." <u>Id.</u> at 886. While acknowledging dictionaries are surveys by people who devote their entire lives to discovering the usage of words, the Seventh Circuit cogitated "[i]t would be a bad idea to replace the work of these professionals with the first impressions of people on the street." <u>Id.</u> The Seventh Circuit reasoned that using consumer surveys to determine the benchmark by which a claim is measured would remove otherwise useful words from products and would reduce ads and packaging to puffery. <u>Id.</u> at 886-87.

We agree with the Seventh Circuit. To allow a consumer survey to determine a claim's benchmark would subject any advertisement or promotional statement to numerous variables, often unpredictable, and would introduce even more uncertainty into the market place. A manufacturer or advertiser who expended significant resources to substantiate a statement or forge a puffing statement could be blind-sided by a consumer survey that defines the advertising statement differently, subjecting the advertiser or manufacturer to unintended liability for a wholly unanticipated claim the advertisement's plain language would not support. The resulting unpredictability could chill commercial speech, eliminating useful claims from packaging and advertisements. As the Seventh Circuit noted, the Lanham Act protects against misleading and false statements of fact, not misunderstood statements. Id. at 886.

## III. CONCLUSION

For the foregoing reasons, we affirm.

_____