**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 19-20210

United States Court of Appeals
Fifth Circuit

**FILED**
April 9, 2020

Lyle W. Cayce
Clerk

ILLINOIS TOOL WORKS, INC.,

Plaintiff - Appellee Cross-Appellant

v.

RUST-OLEUM CORPORATION,

Defendant - Appellant Cross-Appellee

Appeals from the United States District Court
for the Southern District of Texas

Before CLEMENT, HIGGINSON, and ENGELHARDT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

This case is about a windshield water-repellant advertisement. Illinois Tool Works, Inc.—maker of Rain-X—sued Rust-Oleum Corp. over a commercial for its competing product, RainBrella. Illinois Tool Works argues that the commercial made three false claims: (1) that RainBrella lasts over 100 car washes, (2) that RainBrella lasts twice as long as the leading competitor (who everyone admits is Rain-X), and (3) the so-called *And Remember* claim: "*And remember, RainBrella lasts twice as long as Rain-X. We ran it through 100 car washes to prove it.*" A jury agreed. It found that the 100-car-washes claim was misleading and that the other two claims were false. It awarded Illinois Tool Works over $1.3 million—$392,406 of Rust-Oleum's profits and

No. 19-20210

$925,617 for corrective advertising—but the district court reduced the corrective-advertising award. Neither party was pleased. Illinois Tool Works filed a motion to amend the judgment, and Rust-Oleum filed a renewed motion for judgment as a matter of law and a motion for new trial or to alter/amend the judgment. The court denied all three motions and permanently enjoined Rust-Oleum from making its advertising claims. Both parties appeal. We reverse in part and affirm in part.

I.

We review a ruling on a motion for judgment as a matter of law de novo, applying the same standard as the district court. *Ill. Cent. R.R. Co. v. Guy*, 682 F.3d 381, 392–93 (5th Cir. 2012). Only when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue" is judgment as a matter of law appropriate. FED. R. CIV. P. 50(a). This occurs when "the facts and inferences point so strongly and overwhelmingly in the movant's favor" that jurors could not have reasonably reached a contrary verdict. *Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 362 (5th Cir. 2004).

We review the denial of a motion for a new trial for abuse of discretion. *Olibas v. Barclay*, 838 F.3d 442, 448 (5th Cir. 2016). A district court abuses its discretion if it denies the motion when the evidence supporting the verdict was legally insufficient. *See OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 676 (5th Cir. 2016).

For this case, the two standards collapse into one: the court did not err unless the evidence was legally insufficient to support the judgment.

2

No. 19-20210

II.

Rust-Oleum argues that the district court should have granted its post-verdict motions. According to Rust-Oleum, the evidence was insufficient to show that the 100-car-washes claim was misleading, deceived consumers, was material to them, or harmed Illinois Tool Works. Rust-Oleum also argues that the damages awards were unsupported, inequitable, and punitive.

A.

We begin with damages. Illinois Tool Works brought its false-advertising suit under the Lanham Act, 15 U.S.C. § 1125(a), and the jury awarded Illinois Tool Works damages for disgorgement of profits and corrective advertising. Disgorgement of profits is appropriate only if it is equitable and the defendant's profits are attributable to the Lanham Act violation. *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 919 F.3d 869, 875–76 (5th Cir. 2019). To determine whether disgorgement is equitable, we are guided by the non-mandatory, non-exclusive factors in *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998), *abrogated on other grounds by TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001). To show attribution, a plaintiff must "present evidence that the defendant benefitted from the alleged false advertising." *Logan v. Burgers Ozark Cty. Cured Hams Inc.*, 263 F.3d 447, 465 (5th Cir. 2001). Without such evidence, a Lanham Act plaintiff cannot recover a defendant's profits even if disgorgement would otherwise be equitable. *Retractable Techs.*, 919 F.3d at 876. The district court held that disgorgement was equitable, but did not adequately analyze whether Rust-Oleum's profits were attributable to the Lanham Act violation.

Illinois Tool Works failed to present sufficient evidence of attribution. It cites nothing that links Rust-Oleum's false advertising to its profits, that permits a reasonable inference that the false advertising generated profits, or that shows that even a single consumer purchased RainBrella because of the

false advertising. *See Logan*, 263 F.3d at 465 (affirming judgment as a matter of law denying disgorgement award because the plaintiff "failed to present any evidence that [the defendant's] profits were attributable to false advertising" and "pointed to [no] evidence . . . demonstrating that consumers purchased [the defendant's] product because of its false advertising"). Illinois Tool Works therefore failed to show attribution. This failure is fatal to the disgorgement award.

Illinois Tool Works argues, however, that three things show that Rust-Oleum benefitted from its false advertising: witnesses testified about how important the advertising claims were to Rust-Oleum, tens of thousands of people saw the commercial, and RainBrella was placed on nearby shelves in the same stores as Rain-X. None of this shows attribution.

That Rust-Oleum thought its advertising was important or would generate profits is a truism. Companies obviously hope that advertising will be a boon to business. What Illinois Tool Works failed to do was present evidence that the advertising actually had this effect. *Cf. Tex. Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684, 696 (5th Cir. 1992) (holding that the defendant "would have sold just as many" of its product without the Lanham Act violation and that there was "no basis for inferring" that the defendant's profits were attributable to the violation). And Illinois Tool Works does not explain how the number of people who saw the commercial or RainBrella's relative placement on store shelves are evidence of attribution. None of this shows a causal connection between Rust-Oleum's false advertising and its profits. Thus, we vacate the disgorgement-of-profits award.

The corrective-advertising award is likewise unsupportable. Lanham Act awards are compensatory, not punitive. 15 U.S.C. § 1117(a). The goal of these awards is to achieve equity between the parties. *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 369 (5th Cir. 2000). The $925,617 award here was for future

corrective advertising. The district court reduced the award to $329,505.75, reasoning that this amount was equitable because it was a quarter of Rust-Oleum's advertising expenses.

We have never explicitly condoned a prospective corrective-advertising award, but see no principled reason to prohibit them categorically—some plaintiffs might not be able to afford corrective advertising before receiving an award. Whatever the contours of proving such an award might be, we need not decide them today, because Illinois Tool Works has offered no evidence that could support the award.

Illinois Tool Works has never even asserted that it plans to run corrective advertising. It did not say what the advertising might consist of, offer a ballpark figure of what it might cost, or provide even a rough methodology for the jury to estimate the cost. Damages need not be proven with exacting precision, but they cannot be based on pure speculation. *See Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264 (1946). The jury knew only how much Rust-Oleum spent on its own advertising. Illinois Tool Works gave the jury no tools for deriving from that amount the cost to correct the false advertising. Indeed, Illinois Tool Works did not even show that the alleged harm suffered—Rain-X's injured reputation—needs correcting. *Cf. Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1375 (10th Cir. 1977) (remitting corrective-advertising award to the amount "necessary to place [the plaintiff] in the position it was in before" the defendant began its unfair advertising). Rain-X is the undisputed market leader, and there was no evidence that Rust-Oleum was even remotely successful in its attempt to dethrone the king—i.e., there was no evidence that the alleged reputational injury had any effect on Illinois Tool Works's bottom line. It offered no evidence of what corrective advertising might entail or cost and failed to show that it is even necessary. In such a

situation, an award for prospective corrective advertising is neither compensatory nor equitable—it is a windfall.

Illinois Tool Works's counter arguments are unavailing. It argues that it was not required to show that it "needs" the award, and that its 40 years of goodwill and tens of millions of dollars spent on advertising, coupled with Rust-Oleum's expenditures, support the unremitted amount. But Illinois Tool Works did have to show that it "needs" the award. Corrective-advertising awards, like all § 1117(a) awards, are compensatory. If Illinois Tool Works did not show a loss for which it needs compensation, it cannot receive a compensatory award. *See Zazú Designs v. L'Oréal, S.A.*, 979 F.2d 499, 506 (7th Cir. 1992) (explaining that compensatory awards depend on the loss suffered, and corrective advertising is a way to repair that loss). It showed no such loss, and implicitly concedes this by arguing that it was not required to. Moreover, it does not explain how its decades of goodwill and past advertising expenditures show a loss or justify compensation in any amount. These bald facts lack inherent explanatory value. So these arguments fail.

Illinois Tool Works offered no evidence to support the corrective-advertising award. The jury therefore had nothing upon which it could hang its hat when trying to calculate an amount. This means that the award was based on pure speculation. Without supporting evidence, the jury could not have reasonably awarded any amount to Illinois Tool Works. Thus, we vacate the award.[1]

---

[1] Whether Illinois Tool Works presented sufficient evidence to satisfy the injury element of its Lanham Act claim is distinct from whether it presented sufficient evidence of actual damages to obtain monetary relief. *Logan*, 263 F.3d at 462–63. In vacating the awards, we hold only that Illinois Tool Works presented insufficient evidence of actual damages.

No. 19-20210

Rust-Oleum also argues that the evidence did not show that it acted willfully, and Illinois Tool Works argues that the district court abused its discretion in reducing the corrective-advertising award. Both arguments concern awards that are now null. Thus, they are moot. *See Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006) ("[A]ny set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot.").

B.

We now turn to the Lanham Act claim itself. Rust-Oleum argues that the evidence was insufficient to find it liable for the 100-car-washes claim. Because we have vacated the damages awards, the only issue is whether the evidence was sufficient to support the district court's injunction against making this advertising claim. We hold that it was not.

To obtain injunctive relief, Illinois Tool Works had to show that Rust-Oleum's 100-car-washes claim (1) was a false or misleading statement of fact about its product that (2) tended to deceive a substantial portion of consumers, (3) likely influenced these consumers' purchasing decisions, and (4) injured or likely injured Illinois Tool Works as a result.[2] *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir. 2000). Even if the 100-car-washes claim was misleading and tended to deceive a substantial portion of consumers, Illinois Tool Works presented no evidence that the deception was material—i.e., that the claim was likely to influence consumers' purchasing decisions.

Illinois Tool Works argues that three things show that the claim was material: (1) the claim misrepresented how long RainBrella lasts, which is an inherent quality or characteristic of RainBrella; (2) the claim was important to

---

[2] A Lanham Act plaintiff also must show that the product is in interstate commerce, but no one disputes that element.

No. 19-20210

Rust-Oleum's marketing strategy; and (3) there was evidence of an actually confused consumer. For Illinois Tool Works's first argument, it asserts that a claim about an inherent quality or characteristic of a product is necessarily material, citing two out-of-circuit cases: *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1319 (11th Cir. 2010), and *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 n.3 (2d Cir. 2007). But we have not adopted this rule. Indeed, if we had, *Pizza Hut* would have come out the other way. Although we found that the defendant in *Pizza Hut* made misleading claims about using superior pizza ingredients, we held that the plaintiff failed to present evidence that these statements influenced consumers' purchasing decisions. *Pizza Hut*, 227 F.3d at 502–03. If misleading claims about something as vital to pizza as its ingredients were not necessarily material, a misleading claim about how long a windshield water-repellant treatment lasts was not, either. Moreover, though Illinois Tool Works asserts that consumers want to know how long these products last, it does not substantiate this assertion with evidence. So this argument fails.

For Illinois Tool Works's second argument, it points to the importance and prominence of the 100-car-washes claim in Rust-Oleum's marketing scheme as evidence that the claim was material to consumers. It again cites outside our circuit for a rule that our circuit has, again, not adopted. *See Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 311–12 (1st Cir. 2002). First off, Illinois Tool Works misreads *Cashmere & Camel Hair*. There, the First Circuit held that the "defendants' aggressive marketing strategy highlighting the 'cashmere' nature" of their products allowed for the reasonable inference that *being cashmere* was "an inherent and important characteristic" of these products. *Id.* at 312. That is, the defendants' aggressive marketing strategy did not show materiality; it showed that the claim was about an inherent quality or characteristic of the products, and *that* showed

8

materiality. Illinois Tool Works cites no other authority for the proposition that a defendant's advertising campaign—no matter how aggressive or how much the defendant believed that the advertising would affect consumers—is itself evidence of materiality. In fact, we held the opposite in *Pizza Hut*: "the subjective intent of the defendant's corporate executives to convey a particular message is [not] evidence . . . that consumers in fact relied on the message to make their purchases." 227 F.3d at 503. The same is true here. So this argument fails, too.

For Illinois Tool Works's third argument, it asserts that an online video review of RainBrella shows that the 100-car-washes claim confused a consumer. In that video, the reviewer runs a six-week test and is surprised at RainBrella's ineffectiveness, stating that "RainBrella is supposed to last over 100 washes, so I thought that 44 days outside shouldn't be a problem for it." This might show confusion—i.e., deception—but not materiality. The reviewer does not state that he bought RainBrella because he was misled by the 100-car-washes claim. And Illinois Tool Works produced no evidence to suggest that he did. That someone was confused by an advertising claim while testing it is not, by itself, evidence that the advertising claim was material to that person's purchasing decision. This lone video does not show that the claim was material to the reviewer, let alone allow a reasonable inference that the claim was material to a substantial segment of potential consumers. *See id.* at 502–03 (holding that the plaintiffs failed to offer evidence that the defendant's false or misleading claims "tende[d] to influence the purchasing decisions of . . . the consumers to which they were directed"). So this argument fails as well.

Because Illinois Tool Works presented insufficient evidence that the 100-car-washes claim was material—i.e., that it was likely to influence consumers' purchasing decisions—the jury's verdict on the 100-car-washes claim was legally unsupportable.

No. 19-20210

III.

Rust-Oleum does not appeal the verdict on the other two advertising claims: that RainBrella lasts twice as long as Rain-X and the *And Remember* claim. It adds a footnote in its appellate brief stating that Illinois Tool Works produced no evidence of harm for either claim. That one sentence, devoid of citation or further development, is inadequate briefing to raise the issue on appeal. Thus, Rust-Oleum has forfeited its challenge on this issue. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim.").

Rust-Oleum also adds a footnote asserting that the district court abused its discretion in letting the jury determine liability for the *And Remember* claim, because Illinois Tool Works did not state this as a stand-alone basis for liability in its Amended Complaint. Illinois Tool Works argues that Rust-Oleum's footnote inadequately briefs this issue, and in any event, that the assertion is meritless. We hold that the issue is moot.

The parties do not dispute that the so-called *And Remember* claim—"*And remember, RainBrella lasts twice as long as Rain-X. We ran it through 100 car washes to prove it.*"—includes the claim that RainBrella lasts twice as long as Rain-X. As we just explained, Rust-Oleum does not appeal the verdict on the lasts-twice-as-long claim, and the district court enjoined Rust-Oleum from making it. Rust-Oleum is therefore effectively enjoined from making the *And Remember* claim whether it is a stand-alone basis for liability or not. And because we have vacated the monetary awards, whether the claim lives or dies has no effect on damages. That moots the issue. *See Carmouche*, 449 F.3d at 661.

IV.

Illinois Tool Works failed to present evidence for its disgorgement-of-profits or corrective-advertising awards. It also failed to present evidence that

10

the 100-car-washes claim was material. The district court therefore erred in denying Rust-Oleum's renewed motion for judgment as a matter of law on those issues. Thus, we VACATE the damages awards and REVERSE the district court's judgment enjoining Rust-Oleum from making its 100-car-washes claim. Rust-Oleum does not, however, properly challenge the verdict on the other advertising claims. We therefore AFFIRM the district court's judgment enjoining Rust-Oleum from making those claims.